MORRIS KNOBEL and MORRIS BLOOM, Copartners, Engaged in Business under the Firm Name and Style of KNOBEL & BLOOM, Respondents, Appellants, *v.* LONDON GUARANTEE AND ACCIDENT COMPANY, LIMITED, a Foreign Corporation, Appellant, Respondent.

First Department, February 15, 1918.

Insurance — credit insurance — when insurance company not bound by misrepresentations of sales agent — provisions of policy and rider construed.

An insurance company is not bound by the misrepresentations of a mere soliciting agent who had no authority or discretion as to the terms of policies to be issued, and acted merely as a messenger conveying propositions and counter propositions between the parties and reporting each step for instructions from his principal.

A policy of credit insurance provided that the insured should bear an initial loss of a certain percentage on total gross sales between February 9, 1914, and February 8, 1915, and had attached thereto a rider providing " that the insured shall bear the same percentage of initial loss on the gross sales, shipments and deliveries made between said two dates [September 10, 1913 and February 8, 1914], as the insured bears on shipments during the term of this policy." In an action for loss arising exclusively under the main policy, *held*, that the rider refers only to losses on sales and shipments made prior to the execution of the main policy, which was a renewal and, therefore, the stated percentage on sales prior to said renewal should not be considered in determining the company's liability.

CROSS-APPEALS by the plaintiffs, Morris Knobel and another, and by the defendant, London Guarantee and Accident Company, Limited, from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the

11th day of June, 1917, upon the decision of the court after a trial at the New York Special Term.

The plaintiffs appeal from such judgment only in so far as it fails to direct the reformation of a certain policy of insurance and in so far as it fails to award them damages upon the said policy as reformed.

*Theodore B. Richter* of counsel [*Cohen & Richter,* attorneys], for the respondents, appellants.

*William E. Lowther* of counsel [*Lowther, Smith & Russell,* attorneys], for the appellant, respondent.

DAVIS, J.:

The plaintiffs are cloak manufacturers. The defendant among other things is engaged in the business of insuring credits. Plaintiffs allege two causes of action, *first,* to reform a policy of credit insurance and to recover on it as reformed, and *second,* to recover on it in its existing form without reformation.

The third paragraph of the complaint alleges that on the 9th of February, 1914, the parties to this action entered into a contract with each other whereby in consideration of a premium of $330, the defendant insured the plaintiffs against actual loss to an amount not exceeding $6,000 in excess of an initial or own loss to be first borne by the plaintiffs, being one per cent (but not less than $1,750) of the plaintiffs' total *gross* sales and deliveries between February 9, 1914, and February 8, 1915, occurring by reason of the insolvency of debtors between February 9, 1914, and February 8, 1915, on sales of merchandise owned by or consigned to the plaintiffs and shipped and delivered by them between September 10, 1913, and February 8, 1915. The policy was to be issued with the same terms and conditions as were contained in a former policy issued by defendant to the plaintiffs. It is then alleged that the policy in its present form was delivered to the plaintiffs, and that at the time of its delivery the defendant by its agent stated to plaintiffs that it was issued in accordance with the agreement referred to in paragraph 3 of the complaint, and that by its terms and by the terms of the rider attached, the sole initial or own loss to be first borne by the plaintiffs was one per cent

(but not less than $1,750) of plaintiffs' total gross sales and deliveries between February 9, 1914, and February 8, 1915; that this representation as to the contents of the policy was made by defendant to induce plaintiffs to accept the policy; that plaintiffs, relying upon this representation, accepted the policy without reading it until after its expiration; that during the period covered by the policy the plaintiffs suffered gross losses amounting to $5,346.75; that plaintiffs have received on account of said losses in dividends $1,211.51, leaving a net loss of $4,135.24; that plaintiffs' gross sales for the period between February 9, 1914, and February 8, 1915, were $286,151.45; that the initial loss to be first borne by the plaintiffs is one per cent of the latter amount, *i. e.,* $2,861.51,. leaving an excess loss of $1,273.73, for which plaintiffs claim the defendant is liable.

The complaint also alleges that defendant has refused to pay this amount on the ground that under the terms of the policy and the rider the initial loss to be borne by the plaintiffs is one per cent of the plaintiffs' total gross sales and deliveries made between the 10th of September, 1913, and the 8th of February, 1915. It is then alleged that if such is the proper interpretation of the contract of insurance the clauses upon which such interpretation depends were inserted without the knowledge of plaintiffs, either by mistake of the defendant or its draftsman, or were inserted with an intent to deceive and defraud the plaintiffs, and that the policy was accepted by plaintiffs under the belief induced by defendant's false representations that the sole initial or own loss to be borne by plaintiffs was to be one per cent (but not less than $1,750) of their total gross sales and deliveries made between the 9th of February, 1914, and the 8th of February, 1915. Judgment is demanded also for a reformation of the policy and rider, and for $1,274.48.

The court was of opinion, and so found, that the plaintiffs had been deceived by the solicitor of the defendant as to the terms of the rider in that he told plaintiffs at the time of the delivery of the policy that plaintiffs were to bear no initial loss on sales and deliveries which had been made prior to the taking effect of the renewal policy on February 9, 1914, but the court refused to reform the contract on the

ground that the defendant's agent was a mere solicitor with no discretion as to fixing the terms of the policy and that these representations of the soliciting agent did not bind the defendant company. Thereupon the court found that plain-, tiffs' gross losses between February 9, 1914, and February 8, 1915, covered by the contract, were $5,346.75; that this amount should be reduced by dividends and discounts received, leaving a net loss of $4,053.79. The court then found that the gross sales between February 9, 1914, and February 8, 1915, were $288,146.70. To this amount the court added $15,523.04 of accounts covered and insured under the rider, arriving at a total of $303,669.74. It then computed an initial loss of one per cent on this latter amount of $303,669.74, thus holding the defendant liable for $1,017.10, being the difference between the net loss of $4,053.79 and the initial loss of $3,036.69 borne by plaintiffs. The judgment was for $1,017.10 with interest and costs, and both parties have appealed from the judgment.

As to the reformation of the policy. The evidence shows and the court has found that in the transaction with defendant's solicitor, Morey, the plaintiffs agreed to accept from defendant a policy under which they would bear no initial loss on sales made prior to February 9, 1914. When Morey later delivered the policy plaintiffs asked him if it was in accordance with their previous understanding. Upon Morey's assurance that it embodied the agreement as made, plaintiffs put the policy in their safe without reading it. Nor was it read by them until after its expiration. They then discovered that the terms of the policy had been misrepresented by Morey; that in the rider they were charged with an initial loss on sales made before February 9, 1914. The court has found that under the circumstances the plaintiffs were not negligent in refraining from reading the policy.

The finding that Morey willfully misrepresented the terms of the policy is well established by evidence. The question is whether the defendant is bound by Morey's misrepresentations. The learned court has held that it was not so bound, on the ground that " Morey was merely a solicitor and had no authority to make terms." Morey had no authority or discretion as to the terms of the policy to be issued. He acted

merely as a messenger, conveying proposition and counter-proposition between the parties. Morey's method of conducting the negotiations, reporting as he did, each step for instructions from his principal, indicated to the plaintiffs the meagreness of his authority. He was an agent to solicit business, not to agree upon terms. Therefore, it was entirely outside the scope of Morey's authority either to agree to give the plaintiffs any free coverage or to represent falsely that the policy was so written. We, therefore, think that the learned court was right in refusing to reform the policy on the ground that the defendant was not bound by the misrepresentations of its soliciting agent. However, we think the court erred in arriving at the amount upon which the initial loss of one per cent should be computed. The rider provides " that the insured shall bear the same percentage of initial loss on the gross sales, shipments and deliveries made between said two dates [September 10, 1913 and February 8, 1914] as the insured bears on shipments during the term of this policy." The gross sales made between the two dates mentioned, September 10, 1913, and February 8, 1914, were $106,790.71. The learned court has disregarded these latter gross sales, and calculated the initial loss to be borne by the assured for sales prior to the renewal upon sales covered by the insurance. It will be borne in mind that not all sales were covered by the insurance. The gross sales were not so covered — only certain sales to parties having a specified financial rating. In doing this we think the court went counter to the provisions of the policy that the initial loss to be borne by the defendant should be calculated upon gross sales. It follows that in using $15,523.04 of covered sales to arrive at the amount upon which the initial loss was to be calculated the terms of the policy were disregarded.

Both plaintiffs and defendant are dissatisfied with the result arrived at by the learned court. The defendant claims that the initial loss of one per cent to be borne by the plaintiffs should be computed on all gross sales between September 10, 1913, and February 8, 1915, amounting to $394,937.41. This amount is made up of $106,790.71 of gross sales during the period mentioned in the rider (September 10, 1913, to February 8, 1914) and $288,146.70 gross sales during the

period of the main policy (February 9, 1914, to February 8, 1915). In other words, although this claim is for losses arising exclusively under the main policy, the defendant charges the plaintiffs, not alone with an initial loss of one per cent upon gross sales made during the main policy year, but also with one per cent ($1,067.90) on all sales made between September 10, 1913, and February 8, 1914, the latter date being the beginning of the new period of insurance. By this method of computation the initial loss of one per cent to be borne by the plaintiffs would be $3,949.37. The net loss as admitted by both parties is $4,053.79, all of which was sustained on sales made after February 8, 1914. The difference between the net loss and the initial loss as claimed by defendant is $104.42, which the defendant contends is the extent of its liability.

The result of the construction urged by the defendant is to make the plaintiffs bear an initial loss on sales, etc., covered only for the term of the main policy, computed on gross sales, etc., made both during the period covered by the main policy and that covered by the rider. Thus, although there were no losses on sales covered by the rider, the defendant seeks to decrease its liability on losses under the main policy by charging the plaintiffs with an initial loss of one per cent of gross sales already made during the period covered by the rider in addition to one per cent on the gross sales made during the term of the main policy.

We are not inclined to accept the defendant's interpretation of this contract, as a result of which its liability is fixed at $104.42. The defendant has no right to use one per cent of the gross sales made between September 10, 1913, and February 8, 1914, in estimating the initial loss to be borne by the plaintiffs on sales made during the term of the policy (February 9, 1914, to February 8, 1915).

The main policy and the rider deal with quite different risks, the former with future sales, the latter with past sales whose merits were known to both sides. For instance, on February 8, 1914, when the renewal went into effect, plaintiffs' outstanding accounts amounted to $20,399.62. Of these, $4,876.58 were not covered by the rider. That left $15,523.04 covered by insurance under the rider. The latter accounts

were gilt edge. In fact all of them were paid when due, and the defendant had offered to carry them free so far as those falling due within two months previous to the renewal were concerned.

It seems reasonable, therefore, as contended by the plaintiffs that the rider makes special provision for past sales and has no reference to future sales referred to in the main policy, and that when it provides " that the insured shall bear the same percentage of initial loss on the gross sales, shipments and deliveries made between said two dates [September 10, 1913, and February 8, 1914] as the insured bears on shipments during the term of this policy," it refers only to losses on sales and shipments made prior to the renewal and not to any transaction made after the renewal went into effect.

It follows, therefore, that as there were no losses on the insured outstandings at the time of the renewal there is no initial loss to be borne by the plaintiffs on them. Had there been any losses on the covered outstandings the plaintiffs would have had to bear the initial loss of one per cent on the gross sales between September 10, 1913, and February 8, 1914, *i. e.*, one per cent of $106,790.71. But there were no losses on those outstandings, and the initial losses to be borne by the plaintiffs are those arising under the main policy only.

The net loss between February 9, 1914, and February 8, 1915, was $4,053.79, of which the plaintiffs must bear $2,881.46, *i. e.*, one per cent of gross sales from February 9, 1914, to February 8, 1915, leaving the defendant liable for $1,172.33 as prayed for in the complaint. From these considerations it follows that the plaintiffs are entitled to judgment for $1,172.33.

The judgment should be modified accordingly and as modified affirmed.

An order may be submitted reversing the findings of facts and conclusions of law inconsistent herewith, and embodying findings of fact and conclusions of law in accordance herewith.

DOWLING and SMITH, JJ., concurred; LAUGHLIN and SCOTT, JJ., concurred in result.

Judgment modified as stated in opinion and as modified affirmed. Order to be settled on notice.